Mr. Flowers. May it please the Court, Ben Flowers on behalf of Joseph Lombardo. The main question in this appeal is whether Mr. Lombardo has shown the extraordinary circumstances needed for equitable tolling. He has, and I want to address two points that I think are critical to that conclusion. First, why the framework applies. And second, why he has satisfied the framework's second step. On the first point, this Court in Ramirez v. United States held that a 2255 petitioner can show extraordinary circumstances under Rule 60B by satisfying the Martinez-Trevino framework. It recognized that a 2255 petitioner gets one and only one chance to raise a Sixth Amendment ineffective assistance of counsel claim. And it held that when post-conviction counsel's ineffectiveness prevents him from raising or taking advantage of that one and only opportunity, and when the underlying claim has at least some merit, that is an extraordinary circumstance that justifies reopening the judgment. The exact same logic extends to the equitable tolling context. When post-conviction counsel's ineffectiveness prevents a petitioner from timely filing, he's deprived him, absent tolling, of his one and only opportunity. So do you think the decision of the Seventh Circuit in Ramirez overrules the Supreme Court's holdings in Holland and Lawrence? No, I think it's perfectly consistent with both. With respect to Holland, the Court said that you can show extraordinary circumstances with egregious attorney performance. And I think Ramirez recognizes that one way of doing that is through the Martinez-Trevino framework. With respect to Lawrence, it says that miscalculation by itself is not grounds for equitable tolling. That's no doubt true. We're not contending otherwise. What we're saying is there's a very narrow carve-out for a precise circumstance in which post-conviction counsel untimely files because of his ineffectiveness and there's an underlying claim with at least some merit. So he's deprived of his only chance to raise a Sixth Amendment ineffective assistance of counsel claim. But that would be a dramatic expansion, wouldn't it, of Holland and Lawrence? I don't think it would be. So it's on a claim-by-claim basis. It's only going to apply to those claims, not any other claims that the petitioner may have. And I think, as anyone familiar with the federal judiciary knows, the vast majority of these claims facially have no merit. Someone alleges something that even on the facts alleged would not be a meritorious claim. If there are no further questions on that first point, I'll move to the second point, which is addressing why Mr. Lombardo's claims are substantial. It's important to realize at the outset what he wants to show here. He doesn't have to show that he will ultimately prevail in showing ineffective assistance of trial counsel. He must show only that reasonable jurists could debate whether he will prevail or whether his claims deserve encouragement to proceed further. Here he has a substantial and effective assistance of trial counsel claim, first because his counsel failed to develop the withdrawal defense to the conspiracy charge. This court and other courts have held that one can withdraw from a conspiracy by clearly communicating his intent to do so. What was the evidence of his intent to withdraw? So the main one was he took out an ad in the Chicago Tribune and other major newspapers in 1992, an ad that the chief investigator of the Chicago Crime Commission. So he cites the Tribune? That's his source? It appeared in the Tribune and in two other papers, yes. Oh, okay. So he took out this ad. The chief investigator of the Chicago Crime Commission is on record as saying that he read that as a statement that Mr. Lombardo was done with a life of crime. The trouble is that counsel did nothing to further develop this defense. He put the ad briefly before the jury, and Mr. Lombardo testified that he meant it to constitute notice, but nothing was done to show the jury what this clearly would have communicated to the co-conspirators. So, for example, there was no former outfit member who was called to testify to say how it was received, no expert on the outfitter gang activity in general who may have been able to shed light on that. Nothing was done to develop it whatsoever, and that creates a – the failure to develop that defense creates an ineffective assistance claim with at least some merit. Again, we're not saying we have enough to prove that now. In fact, the opposite is the case. The whole reason that you get to go back and develop this at the post-conviction stage is because you generally can't show an ineffective assistance claim on the trial record. The second way in which counsel was ineffective was failing to develop the alibi to the murder charge. All he did for that was put Mr. Lombardo on the stand and have him insist that he was in Chicago, Illinois, when the murder occurred in Bensonville, Illinois. But the problem with that was that the – first, the jury was not likely to find Mr. Lombardo credible to begin with. They knew from earlier testimony that he had been convicted of serious crimes, crimes including the attempted bribery of a U.S. senator. So they were not likely to credit his testimony, and then counsel destroyed whatever chance they had of crediting it with – when he dismissed Mr. Lombardo as a liar during closing arguments, a point the government capitalized – this is page 8045 of the transcript – when they said, we agree with Mr. Lombardo's counsel. He's not truthful and should not be taken seriously. So counsel – all that counsel did was put a witness on who he knew, that should have known anyway, that the jury was certainly not going to credit and simply rested on that. That would be bad enough on its own, but we actually pointed to concrete things that counsel could have done. At page 44, we note that Mr. Lombardo told counsel about witnesses that counsel never looked into. One of these was a supervisor at the Secretary of State's office by the name of Sullivan, who had written a letter on Mr. Lombardo's behalf. That letter was deemed inadmissible because – or potentially because counsel did not attempt to find the individual. He was not able to get that corroborating evidence before the jury. Despite the effort to demonstrate ineffective assistance, it seems to me that you're seeking to expand the Martinez and Truvino line of cases and even Ramirez, and those weren't even argued before the district court judge. Isn't that correct? Well, Ramirez wasn't decided until after the – But Martinez-Truvino. It couldn't have been argued, and we are open to remanding to the district court to apply the Martinez-Truvino framework in the first instance. We don't think that's necessary. We think we've shown that we've met each step of the framework, but if the court believes it – So you're not acknowledging that what you're asking this court to do is to expand the holdings of Martinez and Truvino to support equitable tolling of a 2255? You think that that finding is perfectly explicit in those two decisions? No, I don't think it's explicit. When I say I think it is consistent with those opinions and that they don't rule it out, I think they're just silent on the point. What Ramirez shows is that it extends beyond the procedural default context in which those cases were decided because it extended it to the 60B context, and from that it follows logically that it applies here as well. But you acknowledge that Martinez and Truvino were not argued before the district court judge? They were pointed out, I believe, in the reply to the government's – I'm sorry, they actually were not. You're right. They were not argued before the – So then what you're asking us to do, I think, is to find that the district court judge engaged in an abuse of discretion because he did not sua sponte extend those two cases in the fashion that you now request. That seems like you're asking a lot. No, because it's per se an abuse of discretion to misapply the law. We're not faulting the district court judge because Ramirez hadn't been decided. He was in prison, wasn't he? Mr. Lombardo? Yeah. You're at the time that we were seeking tolling you? Yeah. Correct. Are there cases that have – sorry – that have considered the difference between a defendant who is at large and can communicate with his lawyer in a comfortable way and so on and someone who's in prison? For purposes of diligence? Yeah. Courts have done that. I mean, it's much more difficult if you're in prison to have good communication with your lawyer. And it's particularly difficult here because Mr. Lombardo has been under very serious administrative segregation provisions since about, I think, April of 2013, and because of those, he is very limited. For example, I had to get preapproval in order to speak to him, even his attorney. Now I can set up calls and whatnot, but it would be very difficult to seek second counsel's opinion on when something should be filed. I see that I'm eating into my rebuttal time, but I'm happy to finish the answer. Okay. That's fine. Mr. Baciu? May it please the Court. The district court correctly dismissed the defendant's petition in this case as untimely, relying upon a long line of Supreme Court cases which specify that where a petition is found untimely or is filed untimely based on a counsel's error in calculating the deadline for filing a petition, that that's a garden variety claim of negligence, which does not support a claim of equitable tolling. I must say, I don't get that at all. I don't get it. You don't get why? I don't understand why, if a person, through no fault of his own, has incompetent counsel, that that should kill his case. Well, Judge, the... What's the point of that? How do they expect some guy in prison to be, you know, supervising his lawyer, getting a new lawyer, correcting the lawyer? That's just unrealistic. Well, I think the point, Judge, and this Court has actually said that that is in fact the case, that a petitioner like Mr. Lombardo would be well served to actually calculate that deadline himself along with his attorney. Oh, come on. How is he supposed to know? He's not his own lawyer. I assume you're quoting from cases of this Court? I am, Judge, yes. Well, I thought that might be the case. I don't care about that. I want you to explain why it makes sense. You don't... Why does it make sense to say if a prisoner faces, you know, serious liability, that if he has an incompetent lawyer, nothing he can do about it? I think the purpose is that the doctrine of equitable tolling requires that there be an external impediment to... Honestly, where do you get that from, external impediment? The guy is not able to substitute for his lawyer. He doesn't know anything. He's a criminal, right? The point is that an attorney... Well, why isn't he entitled in a serious case, not a misdemeanor, in a serious case, why isn't he entitled a competent lawyer, competent counsel? In his post-conviction proceedings?  Because the Supreme Court has not recognized that there's a constitutional right... Well, the Supreme Court doesn't recognize everything, right? Now, can't a lower court be innovative and say that a criminal ought to be able to have a competent lawyer? There is room for innovation when the Supreme Court has not spoken on that. It doesn't make any sense, though. How can you have these incompetent, these criminals, not having a competent lawyer? Look, there are 1,300,000 lawyers in the United States. Can't competent lawyers be found fairly easily to represent an incompetent criminal? Judge, I couldn't point on how easy it is to find competent lawyers. This lawyer here was hired by the Supreme Court. Where are we? Are we in Chicago here? Yeah, we're in Chicago. Yes. Well, they're like, what, 40,000 lawyers? Is that in all of Illinois? There are thousands of lawyers in Chicago. The young lawyers at the big firms, they're very eager to have a shot at representing a defendant, right? Well, Judge, it's not our place to... There's no problem recruiting young lawyers to represent these criminals. Well, this defendant hired his own attorney, Judge. This isn't a case where the defendant was... What does he know about good lawyers, right? It's true to one, he's been in court more than anybody in the room. That doesn't mean he knows anything about picking a lawyer, right? But, Judge, the point is that with regards to the Supreme Court's decision... You keep repeating what the Supreme Court said, and maybe they've said something that binds us. I'd like you to give me a reason why it makes sense, forgetting for a moment about the Supreme Court, to deny competent counsel to someone who is a criminal defendant facing serious charges. Because the risk of an error should not be imposed on the government in this case. It should be imposed on the defendant. The defendant is the one who decides who to hire. It's within his decision to hire whichever attorney he wants. The government should not bear that risk of having this guy not comply with the statute of limitations. That risk falls on the defendant and the counsel he chooses. If he didn't have counsel and he filed it late, we wouldn't say then, well, because he didn't have counsel and he filed it late, he gets a pass. Because if that's the case, there is no statute of limitations that applies in these situations. There is no what? There is no statute of limitations that would apply in these types of cases. And that's the problem here, because if you adopt the rule that's being asked for, what you are basically saying is that when a defendant brings forward an ineffective assistance of counsel claim, there is no statute of limitations. Because the Trevino-Thaler framework says, remember, that a state procedural bar will not actually be enforced in two circumstances. Where counsel is ineffective for failing to raise that claim on post-collateral review, and secondly, where the defendant is not represented by counsel in collateral review. So if you adopt the framework that's being forwarded here today, what you're saying is that if a defendant has no counsel at all, or they have ineffective counsel in post-conviction proceedings in the federal district court, that the statute does not effectively apply to any ineffective assistance of counsel. Well, if the ineffective assistance is the responsibility of the defendant, he knowingly got a lawyer who is no good, then you're right. But if the defendant is not implicated in the incompetence of the lawyer, then he doesn't get a defense.  This is a supplementary proceeding to challenge a trial that was conducted in a fair fashion. That trial was subject to appellate review, direct review. Many of the claims, frankly, that have been raised today are based on the record that was already available at the time of the trial. You hear today that, well, there should have been an alibi defense raised. A surprising argument by counsel, there was an alibi defense raised in the post-conviction petition. What was it? Charles Maselli, a guy that said that Barack Obama and Jesse Jackson were witnesses to a murder of a prostitute, and that's the reason why Maselli knew that Mr. Lombardo was not involved in the homicide of Seifert, because he knew that the weapon for the Seifert homicide had been buried near the body of this prostitute that had been murdered at the direction of President Obama. This is the defense that supposedly is substantial in this case, which obviously it isn't. There wasn't a substantial claim of ineffective assistance of counsel here at all. It's worth reminding the court this is a three-month trial. The evidence against Mr. Lombardo in this case was overwhelming, overwhelming evidence. We had Nick Calabrese, a main member of the Chicago Outfit, who committed over a dozen homicides, testify that Joey Lombardo was a capo of the Grand Avenue crew of the Chicago Outfit. We had Redmune— Well, if what you're trying to say is that the incompetence of his lawyer had no effect, that's fine. But I didn't think that was your argument. Well, we argued in the alternative in our brief, Judge, that first this isn't a case for reckonable tolling, but secondarily or a tertiary argument was that when you look at the actual claim that was raised here, it wasn't a substantial claim. Even if this Trevino-Thaler framework applied, this wasn't even close to a substantial claim. The idea that, oh, well, somebody should have been called to talk about the publication or how far or how many people read the Chicago Tribune, that that was going to change the tide, it obviously wasn't going to change the tide. Joey Lombardo testified in cross-examination that he was never a member of the Chicago Outfit. The prosecutor that cross-examined him got him to confirm you have to be in— Counsel, beyond that, so do you think that the bar for ineffective assistance should be set higher in 2255 cases because the party doesn't have a right to counsel anyway? There is that. That's correct, Judge. But the other thing, too, is that what we're suggesting here or what's being offered here is a means to overcome a statute of limitations. This is not a case of merely a procedural bar. That's a judge-made procedural bar as in Coleman v. Thompson when it's applied to a state case. What's being advanced here is a claim that the courts should actually make an exception to the statute that was passed by Congress. Judges can make exceptions to judge-made rules. There are a lot more reticence to make exceptions to a statute which already has four exceptions in it for the tolling of the statute of limitations. There's not a single court in the country that has adopted this view. It's been raised in the Eleventh Circuit. The Eleventh Circuit has ruled against this precise argument, and there's probably been about 30 cases. Are you talking about competence of counsel now or something else? I'm talking about the application of the Martinez-Trovino framework to the issue of the statute of limitations and whether or not it satisfies equitable tolling. This argument has been raised. I don't understand you. What I mean to say is that other petitioners have suggested that the Martinez and Trovino framework. Well, forget Martinez and Trovino. What the courts have said is that ineffective assistance of post-conviction counsel is not a grounds upon which to excuse a late filing of a federal petition for federal habeas corpus, and they have indicated that Martinez and the Trovino case does not apply in that context. It was narrowly cabined by the Supreme Court, and there are roughly probably 30 opinions from the district courts across the country uniformly. So ineffective assistance just doesn't count in any post? Merely ineffective assistance does not. If an attorney. What goes, you say merely ineffective assistance. What more does a defendant need? Well, if a defendant can show that his counsel abandoned him, basically walked away from the representation, that would be a grounds upon which. Why? Why is that worse than being incompetent? Because the Supreme Court has explained that in that situation, an attorney is supposed to be acting as an agent for a defendant, and as an agent, the defendant is responsible for the acts that the agent takes on his behalf. But where the attorney effectively stops acting as an agent because he walks away from the case. Well, what's the difference between walking away from the case and handling it incompetently for your client? Because of the principle that a defendant that hires an attorney is responsible for the acts of. No, but apparently he's not responsible for keeping him on the job. You say if the lawyer walks away. Right, that's not the client's fault. But neither is it the client's fault if the lawyer is incompetent. Unless he knew he was incompetent when he retained him. So what's the difference? There is a difference in the sense that. No, I don't see the difference. Why is abandonment worse than incompetence? Because when you're abandoned, you're no longer working. Oh, come on. But if you're incompetent, it doesn't matter that you're still working for your defendant. You're not doing him any good. That's the distinction the case recognizes. But it doesn't make sense. Well, it does make sense. Well, you don't make any sense of it. You don't have to make it make sense. Why is there a difference between abandonment and incompetence? Because the principle is that as an agent, because he is an agent for the defendant, the defendant has to accept whatever acts that agent takes in his favor or disfavor. That's so unrealistic. Anyway, I'll stop tormenting you. I appreciate it, Judge. Do you have anything further? We'd ask the Court to affirm the judgment of the district court. Thank you. Okay. Well, thank you very much, Mr. Boucher. Mr. Flowers, you have another minute or so? I just want to make a couple quick points. First, we've never argued that the Miscellany argument is substantial. The government said that in their red brief, and we made clear in their reply brief that we were not making that argument. Insofar as the argument is as frivolous as the government suggests, all that does is highlight how bad post-conviction counsel was below it because he made so much of that. We are not arguing here that it's a substantial claim. Number two, the equitable tolling law most certainly does not require abandonment. The Supreme Court has ruled that out. In Holland, the Supreme Court reversed an 11th Circuit test under which you could show tolling based on gross negligence of attorney only in cases of bad faith, divided loyalty, or mental impairment. The Supreme Court rejected that test. It said it was too rigid. Of course, if anything, an abandonment-only test would be even more rigid. So it follows from Holland that extraordinary circumstances are not limited to cases of abandonment. It's through the government suggesting that it's abandonment only that would, in fact, run contrary to the Supreme Court. And finally, because of that, I just want to note that even if Your Honors think that the Martinez-Trevino framework does not apply, we've nonetheless shown extraordinary circumstances because counsel's conduct here was so egregious. By failing to familiarize himself with a critical and complex question of law and relying entirely on a non-lawyer's legal analysis, he deprived his client of what he should have. Well, what was his worst mistake? For purposes of this appeal, the worst mistake was making no effort to figure out when the petition had to be filed, and that's exacerbated by the fact that he relied on it. He let a non-lawyer do this. It's a very complex question. This isn't just counting a number of cases. Who is the non-lawyer that he relied on? He said a trusted paralegal, but there's no— A trusted paralegal. But there's no—we don't know who it is. If there are no further questions, we ask that you either reverse or remain for further proceedings. Okay, well, thank you very much. Thank you very much, Mr. Flowers and also Mr. Buck. So the court will be in recess.